**Cecil C. LITTLE**

v.

**DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, SOCIAL SECURITY ADMINISTRATION, Washington, D. C.**

**Civ. A. No. 933.**

United States District Court
S. D. Mississippi, E. D.

May 14, 1959.

Lester F. Williamson, Meridian, Miss., for plaintiff.

Edwin R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., for defendant.

BEN C. DAWKINS, Sr., District Judge.

On September 12, 1955, complainant filed with the defendant, herein called the Board, an application to establish disability under Section 416(i) of the Social Security Act, as amended, 42 U.S.C.A. § 416(i). He alleged that on February 28, 1955, he was so severely injured while in the course of this employment as a paint machine operator for Flint-cote Company he became totally and permanently unable to engage in any "substantial gainful activity" for the support of himself and family, within the meaning of the Social Security Act.

After due hearing by the Board, a Referee and the office of Appeals Council, his claim was denied, and he brought the present action as provided by the statute.

Section 416(i) (1) provides that to be entitled to the relief sought, before he attains the age of 65, (being 58 years old at time of his injuries) he must be in a state of " * * * inability to engage in any substantial gainful activity *by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.*"

It further provides he "shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

Section 416(i) (2) further requires that the period of total disability must continue "not less than six full calendar months * * *"; and by an amendment in 1954 (Section 106(d)), it was declared that one entitled to relief should be placed in a disability freeze protecting the insurance rights for those quarters occurring during the period of disability heretofore set forth.

The rigidity of requirements no doubt was intended to prevent abuses by undeserving claimants. At the same time, it must be assumed that the law-maker intended to provide relief in meritorious cases, until reaching the age of retirement under the Social Security Act, for those who, through unfortunate circumstances are deprived of the ability to earn a living for themselves and their families.

The Act as amended, therefore, in addition to the burden of proof in ordinary civil actions, requiring the plaintiff to support his demand by a fair preponderance of the evidence, denies to the courts the power to overrule a decision of the Board, if it is supported by *substantial evidence.* However, the meaning of "substantial evidence" here is still a judicial question, and if there is such evidence supporting the claim, with little to the contrary other than conclusions, which may or may not "stand up" when the claimant's case is presented by experienced counsel, (which he now has in this court, and who presumably will continue to represent him if the matter is remanded) it would appear to be the duty of the court to take such action as will avoid a miscarriage of justice.

The Referee before whom all of the evidence was submitted, as well as the others who considered it, were very fair, but it is felt that the case was not fully developed from claimant's standpoint. The two doctors, who testified, at least one of whom, was the regularly retained physician of the claimant's employer, gave it as their findings at widely separated intervals, Little was totally and permanently disabled from pursuing any substantially "gainful activities." The Referee called this an opinion rather than "medical" evidence. However, these doctors cited the facts as to the extent of plaintiff's injuries, upon which their conclusions were based. There were also several affidavits by lay witnesses, from whom experienced counsel may be able, by interrogation, to develop testimony, which a court would be justified in considering on another trial.

The claimant went to the 9th grade in primary school, had no special skill, and worked generally as a common laborer. During most of the time of his

employment with Flintcote, he operated a paint machine by which he was injured twice. The first time in 1949, which confined him to a hospital for approximately a year; and the second, out of which this proceeding arose, a little less than a month. There was testimony that his earning capacity was reduced 40% in the first, and in the last, that it was total and permanent.

While the claim might be sustained on the present record, it is felt the case should be remanded for more careful presentation to and determination by the Administrative Agency.